UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 13bk39194 |
| | ) | |
| Kent Allen Woods | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court is the Motion of Leticia Zaragoza for Relief from the Automatic Stay Pending Arbitration (the "Motion"), brought by Leticia Zaragoza (the "Movant"). At the outset, the Movant challenges this court's constitutional authority to hear the matters before it. While it is without question that this court has the authority to hear the Motion itself, the Movant attempts to establish grounds for the Motion in showing that the underlying action – a presently pending arbitration matter before the Chicago Board of Trade (the "CBOT") – lies outside of this court's authority. The Movant misapprehends the import of recent Supreme Court decisions regarding the constitutional authority of the bankruptcy courts, and that argument is fundamentally flawed. Further, even had the Movant been able to establish a challenge to this court's authority on such grounds, the Movant mistakes a lack of constitutional authority to hear an underlying matter as sufficient grounds for relief from stay. Finding no other grounds in the Motion to grant relief from stay, the court denies the Motion.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under title 11. 28 U.S.C. § 157(b)(1). Motions to terminate, annul, or modify the automatic stay are core proceedings arising under title 11, in which the bankruptcy court is empowered to enter orders. 28 U.S.C. § 157(b)(2)(G); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976-77 (N.D. Ill. 1992); *In re Quade*, 482 B.R. 217, 221 (Bankr. N.D. Ill. 2012) (Barnes, J.), *aff'd*, 498 B.R. 852 (N.D. Ill. 2013).

This court's constitutional authority has, in part, been challenged by the Movant, and will be discussed in more detail below.

Document    Page 2 of 12

PROCEDURAL HISTORY

This matter has a somewhat complex procedural history. On July 23, 2014, the Motion came on for hearing. At that hearing the Movant failed to appear and prosecute the Motion. As a result, the Motion was denied both on the merits as the Motion failed to provide grounds and for want of prosecution. *See* Local Rule 9013-1(H) of the Local Rules of the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules") ("If a movant fails to present the motion at the time set for presentment, the court may, in its discretion, deny the motion.").

Thereafter, the Movant moved to vacate the order denying the Motion. The Movant professed to be confused as to the scheduling of another motion for relief from stay for a later date, and did not appear. While such an explanation would not in the face of opposition constitute grounds to vacate the original ruling,[1] the Debtor consented and the previous order was vacated.

On August 5, 2014 (the "Hearing"), the court therefore vacated its initial order granting the Motion and heard the Motion on its merits. Given the additional issues raised in the motion to vacate and at the Hearing, the court permitted each of the parties to supplement the briefing on the matter no later than August 12, 2014. The Movant filed her supplement on August 11, 2014 and the Debtor filed his supplement on August 12, 2014.

In considering the Motion, therefore, the court has considered the Motion itself, the filings with respect thereto, the motion to vacate and the filings with respect thereto, each of the parties' arguments at the Hearing, and each of the parties' respective supplemental filings.

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 1989) (Goldgar, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

BACKGROUND

While the question before the court is relatively simple, it turns in part on the nature and status of the underlying, pre-bankruptcy arbitration. The pertinent facts are as follows:

Prior to the commencement of the above-captioned bankruptcy case (the "Chapter 11 Case") on October 4, 2013 (the "Petition Date"), the Movant was employed by the Debtor. At some point in 2011, the Movant's employment with the Debtor concluded. The parties dispute the manner in which that employment was concluded.

That dispute caused the Movant to commence litigation against the Debtor on June 1, 2012. *See* Leticia Zaragoza v. Kent Woods et al., Case No. 2012 L 006163 (Cir. Ct. of Cook Cty, Illinois, June 1, 2012) (the "State Court Litigation"). In apparent response to the State Court Litigation, the Debtor commenced an arbitration matter before the CBOT. *See* CBOT 12-0031-MA (the "CBOT

---

[1]    The Movant also failed to appear at the later hearing on the other motion for relief which the Movant professed to believe was in fact the Movant's.

Arbitration"). In the CBOT Arbitration, the Movant asserted as a counterclaim her claims against the Debtor from the State Court Litigation. The State Court Litigation was apparently stayed by the commencement of the CBOT Arbitration, which in turn was stayed by the commencement of the Chapter 11 Case.

The parties have strongly differing opinions as to the status of the CBOT Arbitration. The Movant argues that the CBOT is the proper forum to hear her industry-related claims, and that that process will happen in relatively short order. The Debtor, on the other hand, argues that the CBOT Arbitration has been fraught with delay and obstructionist tactics, and that it is an imperfect forum, where what are essentially legal claims will be determined by a panel of laypersons.

Irrespective of the foregoing, the Movant has in fact filed a claim (the "Claim") in the bankruptcy case. The Debtor has not asserted any affirmative claims against the Movant in the Chapter 11 Case, but has objected to the Claim, *see* Debtor's Objection to Claim No. 10-2 Filed by Leticia Zaragoza (the "Claim Objection"), and the Claim Objection is scheduled for hearing on August 20, 2014. The Movant has not, to date, responded to the Claim Objection.

## DISCUSSION

While the matter before the court is, at its essence, a fairly routine question of whether the court should lift the stay to allow a dispute to be resolved in a nonbankruptcy forum, the matter has been complicated by the Movant's contention that the Supreme Court's ruling *Stern v. Marshall*, 564 U.S. 2, 131 S.Ct. 2594 (2011) ("*Stern*") holds that this court lacks "jurisdiction" to resolve the Movant's claim. As a result, the court will take up the Movant's *Stern* challenge before considering the merits of the underlying request.

A.   *Stern v. Marshall*

The Movant argues that the dispute between the parties falls outside of this court's jurisdiction to hear and determine matters under the Supreme Court's ruling in *Stern*. It appears that the Movant believes this to be the case both because the nature of the Movant's claim in the CBOT Arbitration is a counterclaim and because the CBOT is somehow the exclusive constitutional forum for such disputes to be heard. Prior to considering these questions, the court will first address a fundamental misunderstanding regarding this court's jurisdiction upon which those arguments are based, after which the court will consider each argument in turn.

   1.   This Court's Jurisdiction

At the outset, it is important to discuss and put to rest a basic misconception that appears to form the basis of the Movant's arguments. That is this: *Stern* did not, in and of itself, act to deny this court the jurisdiction to *hear* anything. The Movant appears to believe that a finding that a matter falls outside this court's constitutional authority to *hear and determine* is tantamount to a finding that a matter is outside of this court's jurisdiction.

That is simply not what *Stern* held, and actually misreads the essential nature of *Stern*. The issue the Supreme Court was faced with in *Stern* was whether a non-Article III court could hear and determine matters within its statutory jurisdiction but outside of its constitutional authority … the so-called "*Stern* claims." Irrespective of the fact that a *Stern* claim lies outside a bankruptcy court's

3

constitutional authority, such a *Stern* claim remains within the court's jurisdiction per the express terms of the statute.[2]

That creates a problem, of course, as this is a distinction with a difference. When a matter is within the court's statutory jurisdiction but outside its constitutional authority to hear and determine, may the court nonetheless hear but not determine that matter? The statutory scheme delineating bankruptcy court jurisdiction implies but does not state that the answer is yes.

Title 28 of the United States Code provides that original jurisdiction over bankruptcy cases is given over exclusively to the district courts. 28 U.S.C. § 1334(a). Original but nonexclusive jurisdiction is given the district courts of "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Such matters may, in the discretion of the district court, to the bankruptcy judges for the district. 28 U.S.C. § 157(a).

The scope of that referral is set out in 28 U.S.C. § 157. Matters clearly within the bankruptcy court's jurisdiction are set forth in 28 U.S.C. § 157(b)(1) and may be heard and determined by the court as "core proceedings" per that same authority. Matters that are not core proceedings but are "otherwise related to a case under title 11" may be heard but not determined by the bankruptcy court per 28 U.S.C. § 157(c). In such matters, the bankruptcy court hears the matter and submits proposed findings of fact and conclusions of law to the district court for determination ... entry of final order or judgment after "considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." *Id.*

Given that 28 U.S.C. § 157(c) permits bankruptcy courts to hear but not determine a broad range of matters based only on whether they relate to the bankruptcy case, it follows that any matter related to a case under title 11, whether or not such matter is a core proceeding, may be so heard even if the authority to hear and determine such a matter under 28 U.S.C. § 157(b)(1) is constitutionally infirm. So held a number of courts when faced with this same question. *Executive Benefits Insurance Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012); *see also Rothrock v. PNC Bank, N.A. (In re Parco Merged Media Corp.)*, 489 B.R. 323, 325 (D. Me. 2013) (stating that "[m]ost district and bankruptcy courts that have addressed the issue have reached the same conclusion." and providing cites aggregating cases). Under such logic, a *Stern* claim falls within the bankruptcy court's statutory jurisdiction to hear but not determine a matter under 28 U.S.C. § 157(c).

There was, however, another approach to interpreting *Stern* claims and that approach was adopted here within the Seventh Circuit. At its essence, that reasoning is that matters under 28 U.S.C. § 157(b)(1) and matters under 28 U.S.C. § 157(c) are mutually exclusive, as the latter is expressly limited to "a proceeding that is not a core proceeding ...." 28 U.S.C. § 157(c). Thus 28 U.S.C. § 157(c) does not act has a "catchall" to *Stern* claims, as such matters remain core proceedings and are excluded from the statutory jurisdiction granted bankruptcy courts to hear but not

---

[2] Despite the Movant's assertion that *Stern* "addressed the jurisdictional issues of bankruptcy courts in relation to state court claims," *see* Movant's Suppl. ¶ 17, the Supreme Court held that the statute addressed in *Stern*, 28 U.S.C. § 157(b), does "not have the hallmarks of a jurisdictional decree," but instead merely "allocates the authority to enter final judgment between the bankruptcy court and the district court." *Stern*, 564 U.S. at ___; 131 S.Ct. at 2607.

determine thereunder. Such matters fall within a "statutory gap" of statutory drafting, and thus may be neither heard nor determined by the bankruptcy courts. *See Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906 (7th Cir. 2011); *see also Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313 (5th Cir. 2013); *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

That statutory gap in jurisdiction has come to be known locally as the *Ortiz* hole, and its existence has been a challenge for the bankruptcy courts in this jurisdiction. Compounding those issues, the breadth and depth of the *Ortiz* hole were each arguably increased by a later Seventh Circuit holding in *Wellness Intern. Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013), which held that, among other things, the *Ortiz* hole could not be remedied through concepts of forfeiture. *Id.* at 768.[3]

It is only in the *Ortiz* hole that the Movant's argument that a *Stern* claim results in a lack of jurisdiction has merit. While, as discussed below, the Movant incorrectly conflates constitutional authority and jurisdiction, until recently, in the one limited aspect of the *Ortiz* hole, the Movant's theory had merit.

Recently, however, the Supreme Court issued its opinion with respect to the Ninth Circuit's *Bellingham* decision noted above. *Executive Benefits Ins. Agency v. Arkison*, ___ U.S. ___, 134 S.Ct. 2165 (2014). In affirming the *Bellingham* decision, *Arkison* expressly disclaims the statutory gap and confirms the ability of the bankruptcy courts to hear but not determine *Stern* claims under 28 U.S.C. § 157(c). *Id.* at 2172-73. There is little question that *Arkison* abrogates the result in *Ortiz*, and that there is no longer a statutory gap in jurisdiction in the Seventh Circuit. *Settlers' Housing Service, Inc. v. Schaumburg Bank & Trust Company, N.A. (In re Settlers' Housing Service, Inc.)*, No. 13-BK-28022, 2014 WL 2986107 (Bankr. N.D. Ill. June 30, 2014) (Schmetterer, J.).[4] The *Ortiz* hole has been closed (and was closed before the Motion was filed), and the Movant's argument in this regard is therefore not well taken.

2. The Movant's Claim as a *Stern* Claim

While the foregoing makes clear that, irrespective of whether the Claim is a *Stern* claim, this court has the power to *hear* the matter, an open issue remains as to whether the court may *determine* the Claim as a core proceeding.[5] For that, the court must answer the question of whether the Claim

---

3    *Wellness* appeared also to speak to whether a bankruptcy court might have the ability to hear matters through consent or waiver, but a later decision of the Seventh Circuit made clear that that issue remains an open question. *Peterson v. Somers Dublin Ltd.*, 729 F.3d 741, 747 (7th Cir. 2013) ("[W]e think the effect of an express and mutual waiver open in this circuit."). The Supreme Court has granted *certiorari* in *Wellness*. *Wellness Intern. Network, Ltd. v. Sharif*, 134 S.Ct. 2901 (July 1, 2014).

4    *Settlers' Housing* speaks itself in terms of the abrogation of *Wellness*, which is true insofar as *Wellness* confirmed the existence of the *Ortiz* hole. *Id.* It is in this court's opinion more to the point that *Ortiz* has been abrogated by *Arkison* in that *Arkison* disclaims the statutory gap held to exist in *Ortiz*. *Wellness* spoke to broader issues, but based its holding on *Ortiz*, and will be heard on *certiorari* by the Supreme Court in the coming term.

5    The court is aware that this now strays well beyond the limited summary nature of relief from stay proceedings. "Hearings to determine whether the stay should be lifted are meant to be summary in character. The statute requires that the bankruptcy court's action be quick." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). The discussion below addresses how, even if this court may not determine that matter,

is in fact a *Stern* Claim, which the Movant appears to believe is tautological given that the Claim is a counterclaim. The court disagrees.

At a certain level, the Movant's reliance on the nature of her claim as a counterclaim to put forth her *Stern* challenge is understandable, given the number of times this was stressed in *Stern* itself and that the holding is abbreviated in the syllabus thereto, *e.g.*, *Stern*, 564 U.S. at ___; 131 S.Ct. at 2596 ("Although the Bankruptcy Court had the statutory authority to enter judgment on Vickie's counterclaim, it lacked the constitutional authority to do so."), and has been highlighted in the treatises covering *Stern*. *E.g.*, Schechter, D., *Statutory Power of Bankruptcy Courts to Hear and Determine Compulsory State-Law Counterclaims Against Non-Bankrupt Claimants is Unconstitutional*, 2011 Comm. Fin. News 51 (June 27, 2011).

Such shorthand misses the fact that the Movant's Claim is not a counterclaim at all, other than by happenstance.[6] The Movant asserted the Claim first as the relief sought in the State Court Litigation. Only the commencement of the CBOT Arbitration by the Debtor causes the Claim to be referred to as a counterclaim. But it is, in fact, more precisely a claim against the Debtor.

The Movant's *Stern* challenge also misses the actual language of the ruling, which states that "[t]he Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim *that is not resolved in the process of ruling on a creditor's proof of claim*." *Stern*, 564 U.S. at ___, 131 S.Ct. at 2620 (emphasis added). Even if one were to conclude, incorrectly as the Movant does here, that the Supreme Court intended to speak in expansive terms about counterclaims because of their nature of being counterclaims, the emphasized language should have deterred such an interpretation.

Why? Because here, the counterclaim is not a claim *by* the debtor, as it was in *Stern*. Here, the state law counterclaim is one *against* the debtor. In other words, the state law counterclaim here is the claim against the bankruptcy estate, a claim that the Movant has filed with this court. It is not, as discussed above, a counterclaim at all.

Nothing in *Stern* denies the bankruptcy court its fundamental authority to determine such claims, as the emphasized language makes clear. Even were the Claim a counterclaim, substituting the term "state law counterclaim" for the phrase "proof of claim" in the emphasized language drives home how the express holding in *Stern* is inapplicable here.[7]

The foregoing, however, while dispositive of the Movant's first argument, is more of an analysis of the language of *Stern* than it is the holding of *Stern*. The actual holding of *Stern* is better taken up in the context of the Movant's second argument.

---

relief from stay may not be in order. Nonetheless, as the Movant has raised the issue and as the issue is pertinent to the coming Claims Objection, the court will address this now.

[6] Even if it were, the filing of the Claim by the Movant would against put the matter squarely within the Court's jurisdiction. 28 U.S.C. § 157(b)(2)(C); *Stern*, 564 U.S. at ___; 131 S.Ct. at 2620.

[7] *E.g.*, to state that court lacks "authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on the creditor's state law counterclaim" would be to say nothing at all.

3. Authority To Hear Matters Subject to Arbitration Before the Chicago Board of Trade

The Movant's second *Stern* argument, that the CBOT is somehow the exclusive constitutional forum for such disputes to be heard, cuts more to heart of the actual holding of *Stern*.

Putting aside the language discussion above, what exactly did *Stern* hold? This is obviously the subject of some debate. When this court first took up the issue of *Stern*'s holding in 2012, research showed that there were more than 600 cases citing to *Stern* in just over a year following *Stern*'s issuance. *KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 898 n.2 (Bankr. N.D. Ill. 2012) (Barnes, J.). The same search today reveals that that number has more than doubled.

In *Wisenbaker*, this court considered at length the language of *Stern*, concluding that much of the public/private rights discussion contained therein was *dicta*. *Id.* at 900-901. Instead, this court concluded that "the Supreme Court in *Stern* ultimately holds that 'the question is [(i)] whether the action at issue stems from the bankruptcy itself or [(ii)] would necessarily be resolved in the claims allowance process.' *Stern v. Marshall*, 131 S.Ct. at 2618. If any broad rule were to be derived from *Stern*, it would be this." *Id.* at 901.

Here, there is no question that a determination on the Motion itself is within this court's jurisdiction and authority as a matter arising under title 11. 28 U.S.C. § 157(b)(2)(G). Further, as discussed above, there is no question that a resolution of the Claim – as a claim against the bankruptcy estate – is necessarily "resolved in the claims allowance process." *Stern*, 564 U.S. at ___, 131 S.Ct. at 2618. Thus there is no basis here to challenge the court's authority based on *Stern*.

It is true that, as a justification for the foregoing, the public/private rights analysis is somewhat unavoidable. But even if this court were to take up this second prong of the Movant's *Stern* challenge in the context of public/private rights without heed to the actual holding, the Movant's challenge would fail. It has long been known to be the case that "public rights" are rights "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments …." *Crowell v. Benson*, 285 U.S. 22, 50-51 (1932). As was noted recently by another bankruptcy court, "[s]ince *Crowell*, the Supreme Court has broadened the definition of 'public rights' to be more pragmatic and include relief that flows from a federal statutory scheme or completely depends on the adjudication of a claim created by federal law." *Quality Properties, LLC v. Pine Apple Conveyor Service, Inc. (In re Quality Properties, LLC)*, Case No. 10-42783-JJR-11, Adv. No. 10-40132-JJR, 2011 WL 6161010 (Bankr. N.D. Ala. Nov. 29, 2011) (*citing Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853-56 (1986); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 584-89 (1985)).

Here, the Movant makes clear that the CBOT Arbitration arises out of rights afforded the parties under federal statute, as the CBOT Arbitration provisions derive from a mandate imposed on the Commodity Futures Trading Commission (the "CFTC") in part by Section 5a(11) of the Commodity Exchange Act, 7 U.S.C. § 12a(7) and Part 180 of the CFTC's regulations.

Accepting that as true, under the foregoing standard, there is therefore no basis for questioning this court's authority. The right to arbitration arising under federal statute is a public right, and *Stern* does not in any way limit this court's authority to hear and determine such rights. At

best there is concurrent jurisdiction between the CBOT and the bankruptcy courts, 28 U.S.C. § 1334(b), and as discussed below, the CBOT has deferred to the bankruptcy courts on such matters.

As is indicated in the title and introduction to this section, the court is aware that the Movant, not being experienced in matters of bankruptcy, may in the guise of a *Stern* constitutional *authority* challenge actually be challenging this court's *jurisdiction*. The *Stern* discussion in the Movant's supplement implies as much, being presented with the subheading of "Bankruptcy Court's Lack of Jurisdiction." Though subject matter jurisdiction is not waivable, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), the Movant has failed to articulate grounds for challenging this court's jurisdiction in that regard. The statutory law regarding this court's jurisdiction to hear and determine claims is clear. 28 U.S.C. § 157(b)(2)(B). Nothing in *Stern* acts to limit this court's jurisdiction, only its constitutional authority to hear matters otherwise within its jurisdiction.

There is little question that this court has jurisdiction to hear state law claims asserted against a bankruptcy estate. The majority of claims arise out of state law, *see, e.g., Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."), and a determination of claims against a bankruptcy estate is fundamental to the bankruptcy process.

> A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or claim against the estate is based. This is essential to the performance of the duties imposed upon it. When an alleged debt or obligation is ascertained to be invalid—without lawful existence—the claim based thereon is necessarily disallowed.

*Lesser v. Gray*, 236 U.S. 70, 74 (1915); *see also In re UAL Corporation*, 310 B.R. 373, 377-78 (Bankr. N.D. Ill. 2004) (Wedoff, J.).

As Judge Wedoff made clear, "a creditor who files a claim against an estate in bankruptcy not only submits that claim to the equitable jurisdiction of the bankruptcy court, but also brings within the bankruptcy jurisdiction counterclaims of the estate that would otherwise require a jury trial." *UAL Corporation*, 310 B.R. at 378 (*citing Langenkamp v. Culp*, 498 U.S. 42 (1990)). That exception seems to apply as well in the context of constitutional authority as well, given that the Supreme Court expressly limited its analysis in *Stern* to claims of debtors not necessarily determined in determining claims against the bankruptcy estate. *Stern*, 564 U.S. at ___, 131 S.Ct. at 2618.

Having filed a claim in the Chapter 11 Case, the Movant has subjected itself to the court's jurisdiction with respect to that claim, and the exercise of that jurisdiction is clearly within the court's statutory jurisdiction and constitutional authority.

B. <u>Relief from Stay</u>

Section 362(d) of the Bankruptcy Code governs requests for relief from the automatic stay, and states, in pertinent part, that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

      (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

      (2) with respect to a stay of an act against property under subsection (a) of this section, if—

        (A) the debtor does not have an equity in such property; and

        (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

  While the Bankruptcy Code addresses, in part, the parties' burdens with respect to motions for relief from stay, it fails to address the initial burden that falls on all parties seeking relief from the court. The Movant, as the moving party, must establish at least a colorable claim to the relief requested. *In re Residential Capital, LLC*, 501 B.R. 624, 643 (Bankr. S.D.N.Y. 2013) ("In a request for stay relief, the moving party bears the initial burden to demonstrate that 'cause' exists to lift the stay.") (*citing Capital Comm. Fed. Credit Union v. Boodrow (In re Boodrow)*, 126 F.3d 43, 48 (2d Cir. 1997) ("We have emphasized that a bankruptcy court should deny relief from the stay if the movant fails to make an initial showing of cause.")).

  After that initial burden is met, section 362(g) places the burden of establishing equity in the property for section 362(d)(2)(A) on the movant and all other burdens on the debtor. 11 U.S.C. § 362(g).

  Here, the Movant appears to advance two independent arguments in support of the Motion, each under section 362(d)(1). First, the Movant argues that this court's lack of authority to hear the underlying claim should constitute cause for relief from stay. Second, that cause exists for this court to grant relief from stay to allow the Claim to be more efficiently handled by through the expertise of the CBOT Arbitration, to which this court should defer.

  The court will consider each argument in turn.

  1.  Lack of Authority

  The Movant cites no authority for the proposition that the inability to hear an underlying matter should constitute grounds for relief from stay.

  In fact, the weight of authority is manifestly to the contrary. *See, e.g., Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 352 (9th Cir. 1996) (multiple cases cited). In *Conejo*, the Ninth Circuit considered whether a district court's reversal of a bankruptcy court's denial of stay relief was appropriate. The district court had found that the matter underlying the motion for relief from stay was subject to mandatory abstention, and thus stay relief was mandated. The Ninth Circuit expressly disclaimed this reasoning, finding that justifications existed for the bankruptcy court to properly decline to lift the stay in such circumstances, and that if Congress had intended there be a mandatory lifting of the stay in such circumstances, it would have drafted the automatic stay accordingly. *Id.* at 352-53 (stating, among other factors, that "judicial economy and

efficient administration of the estate" were reasons why the bankruptcy court might conclude the stay was better left in place).

The Ninth Circuit noted that the bankruptcy court's ruling was appropriate irrespective of the fact that, at the time the bankruptcy court ruled, the movant/creditor had not filed a proof of claim. *Id.* at 353. But prior to the Ninth Circuit's decision, the movant/creditor did file a proof of claim. *Id.* This was, in the Ninth Circuit's opinion, the final nail in the coffin of the movant/creditor's argument. The filing of the proof of claim had unequivocally conferred jurisdiction to the bankruptcy court, and the district court's ruling was incorrect both at the time made and in hindsight. *Id.*; *see also Langenkamp*, 498 U.S. at 44; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989); *UAL Corporation*, 310 B.R. at 378.

In short, even though this court has the authority to hear the Claim, whether or not this court has such authority, this court may in fact decline to grant relief from stay, and this argument fails to establish an independent factor for granting relief from the stay.

2. Appropriate Forum

What remains, after all of the authority and jurisdiction matters are addressed, is a rather traditional argument that this court should lift the stay to allow resolution of the Claim in an alternate forum, because that forum is better suited to address the Claim. Such requests are determined on a case-by-case basis. *Int'l Bus. Machs. v. Fernstrom Storage and Van Co. (In re Fernstrom Storage and Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991).[8]

The Movant argues that the Claim is best determined in the CBOT Arbitration given that it is the forum designated for disputes such as the one existing in the State Court Litigation. The Movant suggests that the CFTC and the CBOT require such matters to be arbitrated, that the CBOT Arbitration's arbitrators are better suited to make the determination on the matters at bar, that the CBOT arbitration has progressed to a state where the most judicious use of resources is in continuing the CBOT Arbitration and that this court should defer to that process by granting relief from stay.

The first of these factors is not compelling. The rules of the CBOT themselves as they pertain to matters in arbitration make it clear that the CBOT defers to this court's jurisdiction, not the other way around:

> No claim, counterclaim, cross-claim or third party-claim will be accepted for arbitration against a respondent if the Market Regulation Department has received notice that a stay exists due to the pendency of any bankruptcy proceeding against that respondent. If such a stay arises after a claim is accepted for arbitration or if the Market Regulation Department subsequently learns that such a stay is pending, the claim shall be dismissed without prejudice as to each respondent who is the subject

---

[8] *Fernstrom* set forth a number of factors to consider when a court is faced with a choice between allowing litigation to proceed or staying that litigation until later. 938 F.2d at 735. That is not precisely the issue here. The question here is more akin to one of abstention, as it raises which forum should be allowed to proceed. As the *Conejo* court made clear, such questions are best resolved in terms of judicial economy and efficient administration. *Conejo*, 96 F.3d at 352-53.

of the stay. Nothing in this rule shall prevent a claim in arbitration from proceeding against any remaining respondent.

CBOT Rule 610 ("Parallel Proceedings").

As to the second, the Debtor points out that the CBOT arbitrators are laypersons, and that the essence of the Claim and the Debtor's defenses to the same turns on the enforceability of contractual waivers. As such, the Debtor contends that this court is the better forum for making such legal determination. The Movant failed to refute the Debtor's contentions as to the nature of the Claim and the Debtor's defenses. The court, therefore, agrees with the Debtor that the CBOT arbitrators are not better suited than this court to determine the Claim.

As to the third factor, the Debtor argues that the CBOT Arbitration has been rife with delay, and that the Movant's tactics therein have been obstructionist. There is no real basis for the court here to assess that argument. That said, the Movant's *Stern* arguments put forth herein certainly cause the court to question whether the Movant is truly seeking an expeditious determination on the merits of the Claim. As this court noted in *Wisenbaker*, "given the number of strategic-minded defendants who have sought to use [*Stern*] to prolong and/or obfuscate litigation, one might venture that there is no bankruptcy court today that has not had to deal with the issues considered in *Stern* and their impact on bankruptcy court authority. … '[U]nfortunately, *Stern* has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court.'" *Wisenbaker*, 480 B.R. at 898 (*quoting In re Ambac Financial Group Inc.*, 457 B.R. 299, 308 (Bankr.S.D.N.Y.2011)).

It may seem that, given the amount of effort the court has spent addressing the Movant's arguments herein, that the Movant has argued something novel or compelling in relation to *Stern*. Quite the contrary. The court informed the Movant at the Hearing that the Movant's position with respect to *Stern* is unfounded. Nonetheless, in the Movant's supplement, the Movant has continued to put forth that position as a blanket, unsupported argument.[9]

The court addresses the *Stern* arguments herein not because of the merits of those arguments, but because lack of merit. The court is hopeful by taking the time to explain the issues, parties such as the Movant will avoid making such meritless arguments in the future.

Whether or not the arguments put forward by the Movant here are indicative of the Movant's conduct in the CBOT Arbitration, the result is that the court is not convinced that the CBOT Arbitration is a better forum for the determination of what appears to be a purely legal claim.

There is also significant risk in allowing a matter such as this to be determined by an arbitration panel when a more appropriate legal forum is available. *See Norman Kern & Co. v. McNabola (In re McNabola)*, 43 B.R. 362, 364-65 (Bankr. N.D. Ill. 1984) (Eisen, J.) (holding that the findings, no matter how expansive, in a CBOT arbitration constitute *res judicata* in the bankruptcy

---

[9] Given the generic nature of the arguments raised by the Movant, much of the foregoing analysis is the court attempting to extrapolate whether a position of merit underlies the Movant's blanket statements, much as this court would do with the *pro se* litigant. This is not something the court is obligated to do. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

court after the award was confirmed by order of the state court). To be bound by the findings of a nonlegal forum would be just the kind of irreparable harm the Seventh Circuit warned against in *Fernstrom*. 938 F.2d at 735-36.

For all of the foregoing reasons, the court is convinced by the Debtor's arguments that judicial economy and efficient administration of the estate are better suited by having the Claim heard in this forum, and therefore that cause therefore does not exists to modify the automatic stay.

## CONCLUSION

For all of the foregoing reasons, the court concludes that the Motion should and will be DENIED and that the Claim Objection will be considered on its merits. A separate order denying the Motion will be issued concurrent with this Memorandum Decision.

Dated: August 18, 2014                                ENTERED:

                                                      _____
                                                      Timothy A. Barnes
                                                      United States Bankruptcy Judge